# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MURIEL NADIA HARRIS, ) | |
| ) | |
| Plaintiff, pro se, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION,** |
| ) | **RECOMMENDATION,** |
| GILBARCO VEEDER ROOT ) | **AND ORDER** |
| ) | |
| Defendant. ) | 1:08CV803 |

This matter is before the court on the following motions by Defendant Gilbarco, Inc. (previously Gilbarco Veeder-Root): (1) a motion for summary judgment (docket no. 30) and (2) an application for attorney's fees (docket no. 34). Plaintiff has failed to file a response in opposition to either motion, and the time to file a response has run. In this posture, the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; thus, the motion for summary judgment must be dealt with by way of recommendation. For the reasons stated herein, it will be recommended that Defendant's motion for summary judgment be granted. Furthermore, the application for attorney's fees will be granted.

**BACKGROUND**

In this employment discrimination case, Plaintiff was employed with Defendant from June 21, 2006, through September 22, 2006. Plaintiff alleges in her complaint that Defendant terminated her employment on September 22, 2006, because she

is Muslim, "hispanic of African descent," and for "complaining" of harassment, thus violating the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff's pro se complaint can reasonably be read to assert Title VII claims for discrimination based on her termination, hostile work environment, and retaliation.

On March 22, 2007, Plaintiff filed a Charge of Discrimination with the EEOC. On July 30, 2008, the EEOC dismissed Plaintiff's charge and notified Plaintiff of her right to sue. On October 31, 2008, Plaintiff filed her pro se complaint. On January 9, 2009, Defendant filed a motion to dismiss, which was denied on May 15, 2009. On September 21, 2009, the court set a jury trial date for July 5, 2010. On December 22, 2009, Defendant filed the pending motion for summary judgment. As noted, Plaintiff has not responded to the motion.

**STATEMENT OF FACTS**

Because the motion before the court is for summary judgment, the facts are presented in a light most favorable to Plaintiff based on the evidence before the court. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 259 (4th Cir. 2005). Some of the facts are disputed; disputed facts will be noted. Finally, as noted Plaintiff did not respond to the motion for summary judgment. Thus, Plaintiff's version of the facts is taken from the allegations in her complaint, her deposition testimony, and her answers to Interrogatories and Request for Production of Documents. (*See* Pl.'s Dep., attached as Exs. to Def.'s Br. Supp. Mot. Compel, docket nos. 26, 27, 28.)

Defendant manufactures products used in the distribution of petroleum. Defendant operates a call center to assist its customers with problems that arise while operating equipment manufactured by Defendant. (Cozart Decl. ¶¶ 2, 3.) On June 22, 2006, Defendant hired Plaintiff to participate in a training course in preparation for work as a Customer Service Representative in the call center. (Pl.'s Dep. at 22, 28, *see* docket nos. 26, 27, 28.) Those involved in the selection of Plaintiff included Roy Cozart, Support Center Manager (white male), and Locksley Lyons, supervisor (African-American male). (Pl.'s Dep. at 19.) The original trainer responsible for Plaintiff's class was John Glosson (white male). (Cozart Decl. ¶ 5.)

Defendant has a policy prohibiting discrimination and harassment based on "race, color, gender, sexual orientation, national origin, religion, disability, age, or any other legally protected characteristic." (Rogers Decl. ¶ 4; Def.'s Ex. 38.) The policy includes a provision encouraging employees to report any harassment. (Ex. 38.) These materials were included in Plaintiff's employee handbook, and she reviewed them when she was hired. (Pl.'s Dep. at 27.)

On July 12, 2006, less than three weeks after she was hired, Plaintiff sent Cozart an email in which she complained about the disruptive behavior of two other trainees in the class. (*See* Cozart Decl. ¶ 9; Def.'s Ex. 8.) The memo does not describe any incidents of harassment or discrimination based on any protected characteristic, and Plaintiff did not report any problems with conduct by any of her

3

supervisors.  (Pl.'s Dep. at 35.)  In the email, Plaintiff complimented her supervisors Glosson and Lyons.  (Pl.'s Dep. at 35; Def.'s Ex. 8.)

As a result of Plaintiff's and other students' complaints, Defendant removed the two disruptive students from the classroom.  (Pl.'s Dep. at 43.)  Plaintiff contends that, in response to the removal of these students, Glosson began to "retaliate" against her.  (Pl.'s Dep. at 40-45.)  Specifically, Plaintiff refers to a report Glosson sent to Cozart, which showed the results of self-administered online test scores of all of the trainees.  (*Id.*)  Plaintiff also testified in her deposition that, as an example of showing how Glosson had a problem with her, Glosson made off-hand comments insinuating that Plaintiff was "the devil in the room."  (*Id.* at 51.)  She also described a time when Glosson told the class that, during the Spanish American war, once the Irish and Americans learned that they were both Catholics, "they got on the same side."  (*Id.* at 50.)  Plaintiff could not explain how the discussion related to her, but she contends that these were discriminatory comments based on her race, religion, and country of origin.  According to Plaintiff, Glosson's behavior escalated when he showed a video that was derogatory to Muslims.  (*Id.* at 52-54.)  Plaintiff did not complain about the video when Glosson initially showed it, and she reported it only about six weeks later.

Cozart visited the training class on August 30, 2006.  After that visit, Plaintiff wrote Cozart an email in which she complained that Glosson was undermining Lyons, the training class supervisor.  (*See* Cozart Decl. ¶ 7.)  Plaintiff admitted in her

4

deposition that August 30 was the first time she complained "about discrimination or something like that." (Pl.'s Dep. at 66.) The following day Cozart followed up with Plaintiff in person and heard a full report of her concerns, including her concerns about the video. (Pl.'s Dep. at 97-98.) After that meeting, Glosson was questioned about the incident and admitted to showing the offensive video, though he claimed it was meant to be humorous political satire. After meeting with Glosson, Cozart sent Plaintiff's email complaint to HR director Dan Page. (*See* Def.'s Ex. 23.) Glosson was subsequently demoted and relieved of his classroom duties. (Cozart Decl. ¶ 8; Rogers Decl. ¶ 5; Def.'s Exs. 24, 25.) On September 12, 2006, Cozart emailed Plaintiff to follow-up on her complaints. (Def.'s Ex. 14.) Plaintiff's response included the following: "I guess everything is ok now . . . [.]" (*Id.*) Cozart nevertheless responded on September 13 that he and Plaintiff "still need[ed] to meet" to discuss Plaintiff's concerns.

Cozart and Plaintiff met in person again on the morning of September 14. At that meeting, Cozart learned for the first time that Plaintiff had written three other email complaints to her supervisor Locksley Lyons in the preceding weeks. (Cozart Decl. ¶ 12.) Within those three complaint emails, Plaintiff had expressed concerns about the classroom environment and Glosson. (*See* Def.'s Exs. 12, 13, 15.) In one of the emails she requested to be transferred to another location or position. The issues in the emails were all related to Glosson and events that happened while he was managing the class. Cozart discussed the issues mentioned in these other

5

emails during the meeting on September 14. (*See* Cozart Decl. ¶ 12.) Plaintiff did not lodge any new complaints during the meeting and indicated that no further investigation was necessary. (*See id.*)

After the September 14 meeting, Cozart followed up with Plaintiff by email. (Cozart Decl. ¶ 13; Def.'s Ex. 16) He mentioned the company's ability and willingness to investigate further if Plaintiff was unsatisfied. There is no copy of a reply by Plaintiff, though she believes she may have responded. Plaintiff also believes that she and Cozart had another meeting the next week to discuss her continued interest in a transfer, and that Cozart explained that hers was the only training class. (*See* Pl.'s Dep. at 107, 129-30.) Plaintiff acknowledged in her deposition that she did not ask Cozart "to do anything." (Pl.'s Dep. at 132.) Furthermore, she did not lodge any complaint of discrimination or harassment. (*See* Cozart Decl. ¶ 13; Rogers Decl. ¶ 6.) In her deposition, Plaintiff testified that "everything was not ok" in the class, but she could not describe any specific problem she was having. She acknowledged that Lyons was running the class in a fair manner; that she did not have any problems with him; and she had no reason to think he had any ill will towards her for any reason. (Pl.'s Dep. at 118.)

On September 22, Plaintiff argued with James Smith and Rebecca Lopez, two other trainees in the training class. She saw them writing an email complaint about her, and when she confronted them, a verbal fight ensued, with all parties raising their voices. Plaintiff was so upset by the names she was called, and the way that

6

the other trainees spoke to her, that she felt ill and asked for Lyons' permission to let her leave early. Plaintiff contends that Lyons eventually told her that she could leave at 3:00, and she did. The following day, September 23, Plaintiff returned to work, only to discover that she had been fired.

Defendant disputes several of the facts asserted by Plaintiff. First, Defendant claims that there were no further meetings between Cozart and Plaintiff after the meeting on September 14. Defendant also contends that Plaintiff instigated the confrontation on September 22, made threatening statements to her colleagues, called one of her colleagues a vulgar name, and then left work without first receiving permission from her supervisor Lyons.[1] Defendant contends that Plaintiff's behavior as she left work indicated that she was quitting her job.

Defendant further contends that even though it was not a factor in the decision not to re-instate Plaintiff, her performance as a trainee had been less than satisfactory from the very beginning. (Cozart Decl. ¶ 19.) Early in the training program, the employees took an online, self-scored exam, on which Plaintiff made the lowest score in the class. (*See* Def.'s Exs. 10, 24, 36.) On September 14, 2006, after Glosson had been removed from the class, another supervisor was observing the training class and sent Mr. Cozart an email indicating that she believed Plaintiff

---

[1] More specifically, Defendant contends that Plaintiff accused Lopez of having a sexual relationship with Glosson, called her a "little whore," and, "screaming at the top of her voice," called her a "Little Puta," which is a Spanish vulgarism for whore. (*See* Def.'s Exs. 33, 35 (e-mail from classmate Angela Boldon.)

7

"is having a lot of difficulty processing alarms and multi-tasking. She seems to become very irritated and upset, when she does not understand." (*See* Def.'s Ex. 37.)

**DISCUSSION**

**Summary Judgment Standard**

As noted, Plaintiff did not respond to the summary judgment motion. An uncontested motion for summary judgment is not automatically granted. *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994). The moving party's facts are deemed uncontroverted, and the court determines whether the moving party is entitled to a judgment as a matter of law. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (the moving party still must show that the facts entitle him to a judgment as a matter of law).

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless

there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). Mere allegations and denials, however, are insufficient to establish a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court will now turn to the heart of the summary judgment analysis.

**Title VII Standard**

Title VII makes it unlawful for an employer:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or

9

circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under the burden-shifting framework of *McDonnell Douglas*, Plaintiff generally must plead facts sufficient to create an inference that an adverse employment decision was based on impermissible considerations. *See id.* at 802. To establish a prima facie case of discriminatory discharge, Plaintiff must show (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) at the time of the adverse employment action he was performing at a level that met his employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).

Once Plaintiff has demonstrated a prima facie case, which creates only an inference of discrimination, the burden then shifts to Defendant to rebut that inference by providing legitimate, nondiscriminatory reasons for the adverse action. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996). If the employer demonstrates a legitimate, nondiscriminatory reason, the presumption of

10

unlawful discrimination created by the *prima facie* case "drops out of the picture," and the burden shifts back to the employee to show that the given reason was merely a pretext for discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 511; *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995). While the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, the employee retains at all times the ultimate burden of persuading the trier of fact that "the protected trait . . . actually motivated the employer's decision" in violation of Title VII. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Nevertheless, "the burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253. To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. *Goldberg*, 836 F.2d at 848. In addition, Plaintiff must come forward with admissible evidence that is more than self-serving opinions or speculation. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

**<u>Discrimination Based on Termination</u>**

I first note that Plaintiff has failed to provide any direct evidence of discrimination; therefore, the court must apply the burden-shifting framework of *McDonnell Douglas*. As a female "Hispanic of African descent", Plaintiff is a member

11

of a racial minority, a protected class. Also, Plaintiff contends that her employment was terminated, which would meet the second step of the prima facie case. More specifically, Plaintiff contends that when she returned to work September 23, HR manager Dan Page told her that she was discharged due to "job abandonment." Defendant contends that Plaintiff resigned by walking out of work without permission on September 22, and that Defendant subsequently refused to reinstate her. I find that, even assuming that Plaintiff was fired, Plaintiff has ultimately failed to establish a prima facie case of discriminatory discharge under Title VII because she has not shown that her performance met Defendant's legitimate job expectations at the time of her termination.

Defendant has presented evidence showing that it decided not to reinstate Plaintiff after the incident on September 22 because Plaintiff's performance did not meet Defendant's standards of professionalism. In support of the summary judgment motion, Defendant has submitted a Declaration by Cozart, the person who made the decision not to reinstate Plaintiff. In determining what happened during the September 22 incident, Cozart relied on reports submitted by several of Plaintiff's co-workers who witnessed the confrontation. If the co-employees' version of events is to be believed, Plaintiff made threats, yelled profanities at a fellow trainee, and acted in an intimidating manner. Furthermore, the co-employees' reports indicated that Plaintiff walked off the job without first seeking permission. Defendant contends that it deemed Plaintiff to have quit her job because she left without permission.

12

Cozart states in his Declaration that because of her behavior, Plaintiff would have been fired even if she had not walked off the job without permission.

In response to the motion for summary judgment, Plaintiff has not presented any evidence to counter Defendant's assertion that she was not meeting legitimate job expectations when she was fired–i.e., that she acted unprofessionally in the September 22 incident. For instance, Plaintiff has presented no affidavits by other co-workers to rebut Defendant's version of the September 22 incident. Indeed, as noted previously, Plaintiff has not even responded to the motion for summary judgment. Plaintiff denied in her deposition that she used profanity in the September 22 incident. She did admit, however, that she raised her voice, accused Lopez of being Glosson's lover, and was so emotionally overwrought after the incident that she left work early. I find that Plaintiff's uncontested behavior is sufficiently unprofessional that it could reasonably contribute to Defendant's legitimate reasons to reject Plaintiff's request to be reinstated to her job. Furthermore, although Plaintiff disputes the other employees' reports of the September 22 incident, the ultimate accuracy of the reports is not significant, as long as Cozart, as the decision-maker, believed the reports. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 220 (4th Cir. 2007) (noting that defendant "put forth uncontested evidence that it terminated [the plaintiff] because its decisionmaker believed that [the plaintiff] was making physical threats toward his supervisor," and stating that "whether [the plaintiff] actually made these threats is irrelevant . . .

13

because it is uncontested that the decisionmaker believed that he did"). In sum, Plaintiff has not demonstrated, and no reasonable jury could conclude, that she was meeting Defendant's legitimate job expectations when she was fired. For these reasons, the discrimination claim based on her termination should be dismissed.

**Discrimination Based on Hostile Work Environment**

"As a prerequisite to filing an employment discrimination action under Title VII [], an aggrieved employee must timely file a charge with the EEOC." *EEOC v. Hansa Prods., Inc.*, 844 F.2d 191, 192 (4th Cir. 1988) (citing *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972)). To be timely, a charge of discrimination "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). With respect to a hostile work environment claim, a charge is timely "[p]rovided than an act contributing to the claim occurs within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (applying the continuing violation theory to a hostile work environment claim).

Here, Plaintiff filed her EEOC charge on March 22, 2007. Therefore, Plaintiff must show that an act of harassment occurred on or after September 23, 2006 (the 180th day before March 2, 2007). Although the parties have disputed the date on which Plaintiff's employment was terminated, there is no dispute that the last day Plaintiff was in the workplace was September 22, 2006. Since all of the events allegedly constituting or contributing to any possible hostile work environment claim occurred on or before September 22, 2006, her hostile work environment claim is

14

time-barred.[2]  *See Ihekwu v. City of Durham*, 129 F. Supp. 2d 870, 886 (M.D.N.C. 2000) (where the plaintiff "did not allege a specific event of harassment within 180 days of the original charge," his hostile work environment claim was time barred). In other words, since Plaintiff has alleged *no* acts of alleged hostile work environment within the 180 days, the so-called "continuing violation" doctrine does not apply to her hostile work environment claim.  *See generally Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 140-42 (4th Cir. 2007).  For all these reasons, the court should dismiss Plaintiff's hostile work environment claim.

**Plaintiff's Claim for Retaliation**

Similarly, Plaintiff fails to produce evidence sufficient to withstand summary judgment as to her retaliation claim.  To establish a prima facie claim for retaliation, a Title VII plaintiff must present evidence sufficient to convince a reasonable jury that (1) she engaged in protected activity; (2) the employer took materially adverse action against her such that it could dissuade a reasonable worker from making or supporting a charge of discrimination or from otherwise engaging in another form of protected activity; and (3) a causal relationship existed between the protected activity and the materially adverse activity.  *See Burlington N. & Sante Fe Ry. v.*

---

[2]  In any event, even if her hostile work environment claim were not time-barred, Plaintiff cannot meet her burden of establishing a hostile work environment due to her race, national origin, or religion because she fails to show that the alleged harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment and create an abusive atmosphere.

15

*White*, 548 U.S. 53, 68 (2006); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

Here, Plaintiff contends that, in response to Plaintiff's complaints about the misbehavior of other trainees and in response to their subsequent removal from the class, her instructor Glosson retaliated against her by making comments about her race, religion, and national origin. Plaintiff describes Glosson's offensive behavior as an act of retaliation. Plaintiff also contends that Defendant ultimately fired her in retaliation for her complaints about racial discrimination.

I find Plaintiff has not presented a prima facie case of retaliation. First, as to Plaintiff's alleged complaints about other trainees disrupting class, this is not protected behavior for the purpose of a retaliation claim under Title VII. In other words, Plaintiff has presented no evidence that she complained to her supervisors about discrimination based on her race, religion, or national origin except for notifying Cozart about the derogatory video. Moreover, as to her contention that she was fired because of her complaints, Defendant has presented evidence that it refused to reinstate Plaintiff after she left work September 22 without Defendant's permission. Plaintiff has presented no evidence to disprove Defendant's contention that it refused, on September 23, to reinstate her for leaving work without permission on September 22. She has also failed to present any evidence to prove a causal connection between her complaints about discrimination and her firing. In sum, the court should grant summary judgment to Defendant as to Plaintiff's retaliation claim.

16

**Defendant's Application for Attorney's Fees**

Defendant is requesting an award of attorney's fees in connection with a discovery dispute. The court had entered earlier orders regarding discovery, and the request for fees is the result of the last of those orders. On November 24, 2009, Defendant filed an Amended Motion to Compel Discovery Responses, which included a request for an award of attorney's fees. (docket no. 24). In a January 14, 2010, order, the court granted Defendant's motion, and Defendant was invited to submit an application for the attorney's fees associated with the motion. On January 19, 2010, Defendant submitted the application and supporting documentation asking for attorney's fees in the amount of $1,524.77.

Rule 37(a)(4) of the Federal Rules of Civil Procedure provides, in part, that if a discovery motion is granted, the court shall award fees unless (1) the motion was filed without the meet-and-confer or (2) the party opposing the motion was substantially justified in doing so. FED. R. CIV. P. 37(a)(4). Here, Defendant has shown that Defendant first attempted to meet and confer with Plaintiff before filing the motion to compel. Furthermore, Plaintiff has not provided substantial justification for failing to comply with discovery. Defendant seeks an award in the amount of $1,524.77 for fees incurred in pursuing the Amended Motion to compel and Defendant has provided evidence showing that the amount of fees requested is reasonable. The court therefore awards Defendant $1,524.77 in attorney's fees. This amount must be paid directly to Defendant's attorney no later than 30 days of

17

entry of this Order.  The court will become involved in the mechanics of payment of the fee award only upon notice from Defendant that it has not been timely received.

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (docket no. 30) be **GRANTED**.  Furthermore, Defendant's application for attorney's fees (docket no. 34) is **GRANTED**, and Plaintiff must pay Defendant's attorney $1,524.77 in fees within 30 days of entry of this Order.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
June 11, 2010